IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-00034-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  MICHAEL SHAWN STEWART, and
2.  **BRYANT EDWIN SEWALL,**

    Defendants.

_____

UNITED STATES' MOTION FOR POST-INDICTMENT RESTRAINING ORDER
_____

COMES NOW the United States of America (the "United States" or the "Government"), by and through Acting United States Attorney Matthew T. Kirsch, and Assistant United States Attorney William B. Gillespie, and hereby files this application under 21 U.S.C. § 853 for entry of a post-indictment restraining order to secure, maintain, and preserve the availability for forfeiture two real properties located in Ukraine: (1) Odessa Oblast, Ovidiopol Region, Lymanka, Zhemchuzhna Street., r/a "Druzhnyi", Building 1-A, Apartment 224 ("the Lymanka Apartment"); and (2) Kyiv, Velyka Vasylkivska Street, Building 40, Apartment 11 ("the Kyiv Apartment").

## Introduction

1. Defendants Michael Shawn Stewart and Bryant Edwin Sewall were charged by indictment in the above captioned matter with conspiring to commit and committing wire fraud in violation of 18 U.S.C. §§ 371 and 1343.  (ECF No. 1, 1–14). Specifically, Defendants Stewart and Sewall executed their scheme to defraud by

inducing investors to invest money in algorithm-based trading in foreign currency exchange ("FOREX") markets.  (*Id.*).

2.     The Government submits that the Indictment returned on February 4, 2021, establishes probable cause to believe that Defendants committed wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 371 and 1343.  (*Id.*).

3.     The Indictment included a forfeiture allegation, seeking forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 2461(c) of any and all of the defendants' right, title, and interest in all property constituting and derived from any proceeds the defendants obtained directly and indirectly as a result of such offense.  (*Id.* at 14–15).

4.     During the investigation, the Government learned of two real properties and facilitating accounts used to transfer funds from initial investor deposits to personal accounts at PJSC CB PrivatBank ("PrivatBank")—a bank in Ukraine—held in the name of Defendant Sewall's wife, Hannah Ohonkova Sewall ("Ohonkova").

5.     Specifically, the investigation showed that the following real properties were purchased with wire fraud proceeds:

> (1) Odessa Oblast, Ovidiopol Region, Lymanka, Zhemchuzhna Street., r/a "Druzhnyi", Building 1-A, Apartment 224 ("the Lymanka Apartment"), legally described as:
>
>> Одеська обл., Овідіопольський р., с. Лиманка, вулиця Жемчужна, ж/м "Дружний", будинок 1а, квартира 224; and
>
> (2) Kyiv, Velyka Vasylkivska Street, Building 40, Apartment 11 ("the Kyiv Apartment"), legally described as:
>
>> м.Київ, вулиця Велика Васильківська, будинок 40, квартира 11,
>
> herein collectively referred as "Subject Real Properties."

2

6. The Government submits that the affidavit of United States Deputy Marshal Tyson Polski (the "Affidavit"), attached hereto as Exhibit 1, provides probable cause to believe that the Subject Real Properties were purchased with proceeds of the fraud scheme. Specifically, the Affidavit establishes probable cause to believe that: (a) as a result of the scheme to defraud, investor funds were deposited directly into accounts at Česká spořitelna a.s. ("Česká spořitelna")—a bank operating in the Czech Republic—held in the name of Blue Isle Markets Inc., an entity controlled by Defendant Stewart, Defendant Sewall, and a third individual; (b) a portion of those investor funds were transferred either directly from Česká spořitelna accounts or through intermediary accounts to accounts at PrivatBank held in Ohonkova's name; and (c) a portion of those investor funds were withdrawn by Ohonkova to purchase each of the Subject Real Properties.

7. Because the Subject Real Properties constitute proceeds of the fraud scheme, they are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 2461(c), and subject to restraint pursuant to 21 U.S.C. § 853(e)(1)(A).

## Argument

**I. The Court has authority to issue restraining orders following the filing of an indictment.**

8. Here, the Indictment alleges that any and all of the defendants' right, title and interest in all property constituting and derived from any proceeds the defendants obtained directly and indirectly as a result of the charged wire fraud and conspiracy counts are subject to forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). (ECF No. 1 ¶¶ 25–26).

9. Property that constitutes proceeds of a wire fraud offense or a conspiracy to commit such offense is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). Section 981(a)(1)(C) provides for the forfeiture of

> Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

18 U.S.C. § 981(a)(1)(C). A specified unlawful activity under 18 U.S.C. § 1956(c)(7), in turn, includes any act or activity constituting an offense listed in 18 U.S.C. § 1961(1), which includes wire fraud in violation of 18 U.S.C. § 1343. 18 U.S.C. §§ 1956(c)(7), 1961(1). As is relevant here, "proceeds" is defined as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A).

10. Pursuant to 28 U.S.C. § 2461(c), the Government may seek criminal forfeiture of a defendant's interest in assets subject to civil forfeiture if the defendant is "charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized," and the Government includes a forfeiture allegation "in the indictment or information pursuant to the Federal Rules of Criminal Procedure." 28 U.S.C. § 2461(c); Fed. R. Crim. P. 32.2. "The procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding . . . ." 28 U.S.C. § 2461(c).

11. The provision governing the issuance of restraining orders to preserve property following the filing of an indictment provides:

4

> (1) Upon application of the United States, the court may enter a restraining order or injunction . . . or take any other action to preserve the availability of [any property subject to forfeiture]--
>
>> (A) upon the filing of an indictment or information charging a violation . . . [for which forfeiture may be ordered] and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section.

21 U.S.C. § 853(e)(1)(A).  The Court has authority to issue such orders without regard to the property's location.  21 U.S.C. § 853(*l*).

12. The Court can issue such a pre-trial restraining order against any property subject to forfeiture under the applicable forfeiture statute upon a finding of probable cause that the property constitutes or is derived from proceeds traceable to a violation of a charged offense for which forfeiture is authorized.  *E.g.*, *United States v. Monsanto,* 491 U.S. 600, 615–16 (1989) ("Indeed, it would be odd to conclude that the Government may not restrain property, such as the home and apartment in respondent's possession, based on a finding of probable cause, when we have held that (under appropriate circumstances), the Government may restrain *persons* where there is a finding of probable cause to believe that the accused has committed a serious offense.").  That is, if the Government may forfeit assets as a consequence of conviction, then upon a showing of probable cause the Government may obtain "an order barring a defendant from frustrating that end by dissipating his assets prior to trial."  *Monsanto*, 491 U.S. at 616.

13. As set forth below, there is probable cause to believe that the Subject Real Properties constitute or are derived from proceeds of the charged wire fraud and conspiracy counts.

**II.     The Subject Real Properties constitute or are derived from proceeds of wire fraud and conspiracy to commit wire fraud.**

14.     The Indictment establishes probable cause to believe that that Defendants fraudulently induced investors to deposit funds in accounts held by Blue Isle Markets Inc. at Česká spořitelna.  (ECF No. 1 ¶¶ 18–21).  As is more fully set forth in the Affidavit, the Subject Real Properties were purchased with investor funds, which, as a result of the scheme to defraud, had been deposited into accounts at Česká spořitelna held in the name of Blue Isle Markets Inc. and then transferred either directly or through intermediary accounts to accounts at PrivatBank held in Ohonkova's name.  The following is a summary of the financial analysis set forth in the Affidavit tracing a portion of those funds to the purchase the Subject Real Properties.

**A.  The Lymanka Apartment**

15.     Ohonkova purchased the Lymanka Apartment from an individual on June 13, 2017.  (Ex. 1 ¶ 36).  According to sworn testimony by Ohonkova, the Lymanka Apartment was purchased for approximately $35,000, although she does not recall the exact amount.  (*Id.* ¶ 37).  Moreover, according to the same testimony, Defendant Sewall paid for the Lymanka Apartment, even though it was registered in Ohonkova's name.[1]  The funds used to purchase the Lymanka Apartment comprise investor funds, as set forth below.

16.     Between March 2016 and April 2018, Česká spořitelna account #6849312 ("Česká #9312") received over $67.8 million in funds either wired directly from investors

---

[1] According to Ohonkova's sworn deposition testimony, from 2016–August of 2019, her only source of income (other than funds provided by Sewall) was a small tailoring business she operated.  However, that business generated less than $1000 per month, which was primarily reinvested into the business to attempt to grow it.

or traceable to investor deposits.  (*Id.* ¶ 28).  No other significant source of deposits funded Česká #9312.  (*Id.* ¶ 29).

17. Between May 30, 2017 and June 6, 2017, a bank account held by Ohonkova, account 5168757290811464 at PrivatBank ("Privat #1464"), received approximately $46,000 from Česká #9312.  (*Id.* ¶¶ 31, 33).  Prior to the first deposit from Česká #9312 into Privat #1464 on May 30, 2017, Privat #1464's account balance was approximately eleven dollars.  *See* (*id.* ¶ 32).

18. Between June 6, 2017 and June 13, 2017, Ohonkova withdrew approximately $45,000 from Privat #1464.  (*Id.* ¶ 34).

19. Based on the timing and amount of these transfers and withdrawals and Ohonkova's sworn deposition testimony, there is probable cause to believe that the approximately $45,000 in cash withdrawn from Privat #1464 was used to purchase the Lymanka apartment, and therefore, that the Lymanka Apartment constitutes or is derived from proceeds of the scheme to defraud, in violation of 18 U.S.C. § 1343, and the conspiracy to effect that scheme, in violation of 18 U.S.C. § 371.

**B.  The Kyiv Apartment**

20. Ohonkova purchased the Kyiv Apartment on May 30, 2019.  (*Id.* ¶ 52).  According to sworn deposition testimony by Ohonkova, the Kyiv Apartment was purchased for approximately $250,000 and Defendant Sewall paid for the Kyiv Apartment, even though it was registered in her name.  (*Id.* ¶ 53).  The funds used to purchase the Kyiv Apartment comprise investor funds, as set forth below.

21. Between March 2016 and April 2019, Česká spořitelna account #6813272 ("Česká #3272"), an account held by Blue Isle Markets Inc., received approximately

$58.4 million in investor funds.  (Ex. 1 ¶ 41).  Approximately $9.1 million of these investor proceeds were transferred to Wells Fargo Bank, N.A. account #2538236486 ("Island Tech Wells Fargo Account #6486"), held by Island Technologies LLC, a holding company owned by Defendant Stewart, Defendant Sewall, and a third individual.  (*Id.*).  Defendants hold signature authority on Island Tech Wells Fargo Account #6486.  (*Id.*).

22.     Within the same period, Island Tech Wells Fargo Account #6486 transferred a total of approximately $2.5 million in fraud proceeds to account #030109329 ("Island Tech Banco Account #9329") at Banco Popular de Puerto Rico ("Banco Popular").  (*Id.* ¶ 42).   Island Tech Banco Account #9329 is held in the name of Island Technologies LLC.  (*Id*).  Defendants hold signature authority on Island Tech Banco Account #9329.  (*Id.*).

23.     Banco Popular account #274068741 ("Banco #8741") is a bank account held in the name of Defendant Sewall.  (*Id.* ¶ 40).  Between November 2018 and September 2019, Banco #8741 received approximately one million dollars in fraud proceeds, combined, from Island Tech Banco Account #9329, Island Tech Wells Fargo Account #6486, and Česká #3272.  (*Id.* ¶ 43).

24.     Between April 12, 2019 and April 26, 2019, an account held by Ohonkova, account #5168742710582507 at PrivatBank ("Privat #2507"), received over $278,500 of investor funds from Banco #8741.  (*Id.* ¶ 46).  On May 29, 2019, $255,000 were transferred from Privat #2507 to account #5218572220832401 ("Privat #2401"), another account held by Ohonkova at PrivatBank.  (*Id.* ¶ 50).

25.     Account records provided by the Prosecutor General of Ukraine for Privat #2401 begin with a transaction on June 18, 2019.  On June 18, 2019, the balance in

8

Privat #2401 was zero, indicating that all $255,000 transferred into Privat #2401 from Privat #2507 on May 29, 2019 had been withdrawn from Privat #2401 by June 18, 2019. (*Id.* ¶ 51).

26. Based on the timing and amount of these transfers and withdrawals and Ohonkova's sworn deposition testimony, there is probable cause to believe that the $255,000 in investor funds withdrawn from Privat #2507 on May 29, 2019 were used to purchase the Kyiv Apartment and, therefore, the Kyiv Apartment constitutes or is derived from proceeds of the scheme to defraud, in violation of 18 U.S.C. § 1343, and the conspiracy to effect that scheme, in violation of 18 U.S.C. § 371.

### III. The restraining order sought by the United States serves the interests underlying 21 U.S.C. § 853(e)(1)(A).

27. The interests to be considered in fashioning a protective order are evident in the statutory language: "to preserve the availability of property…for forfeiture" 21 U.S.C. § 853(e)(1). Upon the conclusion of the criminal action, or the filing of a final order of forfeiture, if the United States prevails, the Subject Real Properties will be forfeited pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as property constituting or derived from proceeds traceable to wire fraud in violation of 18 U.S.C. § 1343, or conspiracy to commit the same. As the Supreme Court has made clear the purpose of the provision authorizing protective orders is to ensure that the commands of the substantive forfeiture provision are carried out, that is, that the property remains fully available at the end of the case. *Monsanto,* 491 U.S. 600, 612–613; *see United States v. Hopkins*, 920 F.3d 690, 695 (10th Cir. 2019) (explaining that the Supreme Court's judgment in *Luis v. United States*, 136 S. Ct. 1083, 1087 (2016), does not implicate the pretrial restraint of "tainted" property).

28. Here, the restraining order sought by the United States serves these interests by prohibiting—except with permission of the Court—the sale or transfer of the Subject Real Properties, thereby preserving those properties for forfeiture upon the issuance of a Final Order of Forfeiture. At this point in time, prior to the entry of Final Order of Forfeiture, the Government does not seek to dispossess Defendant Sewall or Ohonkova of the Subject Real Properties but merely to restrain them to ensure their availability to satisfy a Final Order of Forfeiture as to the Subject Real Properties.

## Relief Requested

The United States requests this Court to enter a restraining order pursuant to 853(e)(1)(A) to restrain, prohibit, and enjoin Defendant Sewall; Hanna Ohonkova Sewall; their agents, servants, employees, attorneys, family members and those persons in active concert or participation with them; and those persons, financial institutions, or entities who have any interest or control over the Subject Real Properties from attempting or completing any action that would affect the availability, marketability or value of those properties—including but not limited to selling, assigning, pledging, distributing, encumbering, wasting, secreting, or otherwise disposing of or removing from the jurisdiction of this Court all or any part of their interest, direct or indirect, in the Subject Real Properties.

The United States further requests that this restraining order remain in full force and effect until further order of this Court.

Dated August 10, 2021.

        Respectfully Submitted,

        MATTHEW T. KIRSCH
        Acting United States Attorney

        s/William B. Gillespie
        **William B. Gillespie**
        Assistant United States Attorney
        United States Attorney's Office
        1801 California Street, Suite 1600
        Denver, CO 80202
        Telephone: 303-454-0100
        E-mail:  William.Gillespie@usdoj.gov
        Counsel for United States

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

        s/ *Jasmine Zachariah*
        FSA Data Analyst
        U.S. Attorney's Office